THOMAS B. O'REAR

*v.*

JOHN W. CRUM.

*Filed at Springfield November 1, 1890.*

1. ADMINISTRATION OF ESTATES—*who may administer — husband on wife's estate—the statute construed.* Section 18 of chapter 3 of the Revised Statutes, relating to the administration of estates, gives the husband the right to administer upon the estate of his deceased wife, although he may have, by post-nuptial contract, released and relinquished all his rights in her estate. The word "shall" in that section is mandatory, unless the husband has waived his right or is disqualified.

2. If, however, the husband applying for letters on his deceased wife's estate is insane or a non-resident of this State, or otherwise disqualified to act in the capacity of administrator, it is made the duty of the court to refuse such letters. But the mere fact of want of a personal pecuniary interest in the estate does not render him *per se* incompetent.

3. CONSTRUCTION OF STATUTES—*the word "shall"—when mandatory* Where the word "shall" is used in a statute, and a right or benefit to any one depends upon giving it an imperative construction, then it is to be regarded as peremptory.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the appellant:

Post-nuptial contracts made upon sufficient consideration, and wholly or partly executed, will be enforced in equity. *Kes-*

*ner* v. *Trigg,* 93 U. S. 54; *Livingston* v. *Livingston,* 2 Johns. Ch. 537; *Bullard* v. *Briggs,* 7 Pick. 533; *Johnson* v. *Spicer,* 107 N. Y. 173; *Young* v. *Hicks,* 92 id. 235; *Bradish* v. *Gibbs,* 3 Johns. Ch. 550; 2 Kent's Com. 139, 165.

The rule at common law was, to grant letters to the husband upon the goods of the deceased wife. The statute was and is only declaratory of the common law. The ecclesiastical courts of England uniformly held it to be a sufficient reason for refusing letters of administration to the husband or to the wife, as the case might be, that the survivor had parted with his interest in the estate; that it was discretionary with the court, and in all such cases the court would grant the letters to the party next in interest. *Goods of Davis,* 2 Curt. 626; *Goods of Williams,* 3 Hagg. 217; *Lambell* v. *Lambell,* id. 568; *Brenchley* v. *Lynn,* 2 Rob. 441; *Goods of Dawson,* id. 135; 2 Redfield on Wills, chap. 3, secs. 5, 6, 7, and notes.

The policy of the law is forcibly set forth in *Matter of Estate of Goddard,* 94 N. Y. 553.

Crum waived all the benefits of this State by entering into this contract, and receiving the full and adequate consideration for the same.

The right to the appointment was one Crum might waive, as we think. No rule of public policy in the way of his waiving his right to be the administrator of his deceased wife's estate exists. When that is the case, the benefits of the statute may be waived. Sedgwick on Const. and Stat. Law, 110.

A party may waive a constitutional as well as statutory provision made for his benefit. Sedgwick on Const. and Stat. Law, 3; *Lee* v. *Tilotson,* 24 Wend. 337; *People* v. *Murray,* 5 Hill, 468; *Baker* v. *Braman,* 6 id. 447; *Embury* v. *Conner,* 3 N. Y. 511.

Mr. JOHN A. BELLATTI, for the appellee:

The statute (Rev. Stat. chap. 3, sec. 18,) gives the husband the right to administer upon the estate of his deceased wife.

Having no interest in the estate,—that is, not being entitled to share in it,—does not disqualify one from acting as administrator.

Where a statute is clear and unambiguous, conveys a definite meaning, and involves no absurdity, there is no room for construction, and the language used must be given its usual and ordinary meaning. *Beardstown* v. *Virginia,* 76 Ill. 34; *Hills* v. *Chicago,* 60 id. 86.

The word "shall" is peremptory when any benefit accrues to any person, or any right of any person depends upon giving it that construction. *Wheeler* v. *Chicago,* 24 Ill. 105; *Waller* v. *Harris,* 20 Wend. 555.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In 1879 John W. Crum was married to Mrs. Frances D. Eads, a widow. In 1886 the husband and wife entered into a post-nuptial contract in writing and under seal. That contract was before this court for adjudication in the case of *Crum* v. *Sawyer et al.* 132 Ill. 443: In and by said contract said John W. Crum remised, released and relinquished to his wife and to her heirs, executors, administrators, devisees and assigns, all his right and interest, of every kind and nature whatsoever, and especially his contingent right of dower and homestead, in all lands of which his wife was then seized, or of which she might thereafter become seized, and covenanted to and with her, and her heirs, executors, administrators, devisees and assigns, that in the event he should survive her, he would not sue for, claim or demand any right of dower or other interest whatsoever in or out of any and all real estate of which she might die seized, or to which she might be entitled at the time of her death, either in possession, remainder or reversion, or otherwise; and in and by said contract he released, remised and relinquished to her, and to her heirs, executors, administrators and legatees, all right, title and claim to any and all distributive share or portion of the personal estate of which

she might be possessed, or to which she might be entitled in reversion, remainder or otherwise, and covenanted and agreed to and with her, and her heirs, executors, administrators and legatees, that in the event he should survive her, he would not sue for, claim or demand any distributive share or interest whatsoever to which he might be entitled, as her surviving husband, in or out of any and all personal estate of which she should die possessed, or to which she might be entitled at the time of her death, in reversion, remainder or otherwise.

The wife, Frances D. E. Crum, died intestate in Morgan county on August 30, 1888, seized of real estate of the value of some $150,000, and possessed of personal estate of the estimated value of $30,000. She had no child or children, but left her surviving, her husband, the appellee, and as her next of kin, George O'Rear, a brother of her deceased father, and John S. Sawyer, a brother of her deceased mother, the former being a resident of said Morgan county and the latter a resident of the State of Indiana. On October 29, 1888, appellee filed a petition in the county court of Morgan county, asking to be appointed administrator of the estate. George O'Rear resisted the application, and filed a counter petition seeking to be appointed such administrator, and on the ground that appellee had for an adequate consideration parted with all his interest in the estate. The county court denied the petition of appellee, but allowed the petition of George O'Rear, and appointed him administrator. An appeal was taken from the order of the county court to the circuit court. Thereupon Mr. Beasley was appointed administrator to collect. Upon the hearing of the appeal in the circuit court, the order of the county court was reversed, and an order was made appointing appellee as administrator. The order of the circuit court was afterwards affirmed in the Appellate Court, and this further appeal then prosecuted. After the entry of judgment in the circuit court George O'Rear died intestate, leaving a widow and six children, and thereupon said widow released her right to administer

upon the estate of Frances D. E. Crum, and the children petitioned that one of their number, Thomas B. O'Rear, appellant herein, be appointed such administrator, but the court refused their request.

It is provided in section 18 of the act in regard to the administration of estates, that "administration shall be granted to the husband upon the goods and chattels of his wife, and to the widow or next of kin to the intestate, or some of them, if they will accept the same, and are not disqualified." We think it clear from the language used in the post-nuptial contract of 1886, that it had reference only to the property rights and interests that appellee then had or might afterwards acquire, by virtue of the marital relation, in the estate of his wife. The statutory right of the husband to administer upon the goods and chattels of his wife is not a right to a distributive share or portion of her personal estate, nor is it an interest in such estate. The right to administer not being a right in or to personal property, it was not waived by the agreement.

It is urged, however, that by valid and binding contract appellee had parted with all interest in the estate of his wife; that the rule of common law was, to grant letters to the husband upon the goods of the deceased wife, but that the ecclesiastical courts of England uniformly refused letters of administration to a husband who had no interest in the estate of his wife, and granted them to the party next in interest. We do not regard the cases cited by appellant, sustaining these latter propositions, as decisive of the matter now at bar. At the common law, the right of the husband to administer was based upon the right which the law gave him to the personal property of the wife, and it was therefore held that the right to letters was not, under all circumstances, absolute and exclusive. If the personal property of the wife, by settlement before marriage, was secured to her next of kin, in the event of her death during coverture such next of kin was entitled to administer in preference to the husband; and in other cases, standing upon

a like footing of reason, it was held that the right of the husband to act in the capacity of administrator was not exclusive.

But the statute of this State says, that administration *shall* be granted to the husband upon the goods and chattels of his wife. We regard this statute as mandatory, unless the husband has waived his right, or is disqualified. Where the word "shall" is used in a statute, and a right or benefit to any one depends upon giving it an imperative construction, then that word is to be regarded as peremptory. (*Fowler* v. *Pirkins*, 77 Ill. 271; *Wheeler* v. *City of Chicago*, 24 id. 105.) Here, the right of appellee to administer upon this estate, and the benefits he will derive in the way of compensation for his services in administering upon a personal estate worth $30,000, are dependent upon giving the word "shall" an imperative signification. In *Jones* v. *Bittinger*, 110 Ind. 476, the words of the statute were: "At any time after the death of an intestate the proper clerk or court shall grant letters of administration in their order: First, to the widow or widower; second, to the next of kin," etc.; and it was held, that the provisions of the statute were mandatory, and ought to be strictly observed.

The term "disqualified," used in that portion of section 18 of our statute in regard to administrations which we have quoted above, applies to each of the preceding persons and classes of persons mentioned. If the husband applying for letters is insane or a non-resident of this State, or otherwise disqualified to act in the capacity of administrator, then, as matter of course, it is not only within the authority of the court to refuse such letters, but it is its imperative duty so to do. But the mere fact that appellee has no personal pecuniary interest in the estate of the intestate does not render him, *per se*, incompetent to act as administrator thereof, or justify the conclusion that he is disqualified to perform the duties of that position.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*