65 Ill. App.3d 380 (1978)
381 N.E.2d 1221
In re ESTATE OF DELBERT R. HARTMAN, Deceased.  (ALICE GUALANDI, Petitioner-Appellant,
v.
CITY NATIONAL BANK OF KANKAKEE et al., Respondents-Appellees.)
No. 77-483.
Illinois Appellate Court  Third District.
Opinion filed October 31, 1978.
*381 Ross M. Canty, of Wenona, and Thompson & Strong, of Pontiac (Kenneth L. Strong, of counsel), for appellant.
Francis J. Householter, of Kankakee, for appellees.
Reversed and remanded.
Mr. JUSTICE ALLOY delivered the opinion of the court:
Alice Gualandi appeals from an order of the Circuit Court of Kankakee County, in which City National Bank of Kankakee was appointed administrator of the estate of Delbert R. Hartman, deceased, on petition of Mary Hartman Thompson, who is a nonresident sister of decedent. Appeal is also taken from the denial by the same circuit court at the same time of the petition of Alice Gualandi, a resident sister of the decedent, Delbert R. Hartman, in which it was requested that Alice Gualandi be appointed administrator of that estate.
On appeal, three issues are presented for determination by this court, namely: (1) whether the circuit court had the power to appoint a nominee of a preferred class member to qualify as adminstrator in preference to a member of the preferred class; (2) whether there was evidence in the record to support the finding of the circuit court of conflicts of interest and hostility among the heirs, which would render Alice Gualandi unsuitable to be the administrator of the estate; (3) whether the circuit court had jurisdiction over all the interested parties involved in the estate of decedent in acting on the petition of Mary Hartman Thompson.
Delbert R. Hartman, a resident of Kankakee County, died intestate on September 3, 1977, and was survived by eight sisters and one brother as his heirs at law. Four of the sisters and a surviving brother of the decedent are residents of Illinois. The remaining four sisters are residents of other states. On September 9, 1977, Alice Gualandi of Wenona, Illinois, a sister of the decedent, filed a verified petition in the Kankakee County Circuit Court praying that letters of administration be issued to her as to the estate of Delbert Hartman. Three of the resident survivors (Donald Hartman, Rosalie Hartman and Ethel Tresp), all of Kankakee County, supported the petition in written and personal appearances.
On the day of the hearing, Mary Hartman Thompson of Seattle, Washington, a sister of the decedent Delbert R. Hartman, through her attorney, filed a petition praying that the City National Bank of Kankakee be appointed as administrator of the Delbert Hartman estate. The remaining four sisters, who had not supported the Gualandi petition, filed written appearances in support of the Thompson petition.
The only evidence received at the October 4, 1977, hearing was the testimony of Alice Gualandi and Donald Hartman. Gualandi testified that she was a sister of the decedent Delbert Hartman. She also testified that *382 the estate of John Hartman, another deceased brother, had been probated in the Circuit Court of Kankakee County in 1965, and that Delbert Hartman, the decedent in the instant case, had been appointed as administrator of that estate. She also testified that the John Hartman estate was not yet closed at the time of the hearing. The testimony of Donald Hartman indicated that he was a brother of the deceased and that he wished to withdraw his support of the Thompson petition and to support the Gualandi petition instead.
At the close of the October 4, 1977, hearing, the trial court took the matter under advisement until October 26, 1977. On that date, the attorney for Mary Hartman Thompson presented the court with two affidavits and a case citation in support of the Thompson petition. The affidavits, sworn to by two of the sisters of the decedent, stated, among other things, that Gualandi in her interest is adverse to the five heirs who requested that the bank be appointed administrator; that Gualandi expressed hostility to two of the heirs; and that court records show that the estate of John Hartman, a deceased brother, who died in Kankakee County, is still open, and that there had been no accounting or distribution in that estate, which was being administered by Delbert Hartman, the decedent in the instant case. There was also a statement that Delbert Hartman was represented by an attorney in his home community and that petitioner Alice Gualandi, who is represented in the instant case by the same attorney, knows that attorney is the attorney for the John Hartman estate and that there is a conflict of interest for such attorney to act for the Delbert Hartman estate while remaining as attorney for the John Hartman estate.
After the trial court had received the affidavits and the case citation, it is stated that the trial court took a 10-minute recess to review them, and then announced the court's decision appointing City National Bank of Kankakee as administrator. In the order of the trial court appointing the bank as administrator, the trial court stated, among other things, that it had considered the affidavits of the two heirs and found a conflict of interest between the heirs, as well as hostility, suspicion, and jealousy existing among the heirs.
Section 9-2 of the Illinois Probate Act of 1975 confers upon the circuit court the power, upon petition therefor, to issue letters of administration in accordance with the preferences specified in section 9-3 of the Probate Act of 1975. (Ill. Rev. Stat. 1977, ch. 110 1/2, pars. 9-2 and 9-3.) In the instant case, the class with the highest applicable preference is listed in section 9-3 as:
"(f) The brothers and sisters [of the decedent] or any person nominated by them." (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 9-3.)
The preferences specified in the preceding statutes, replaced by section *383 9-3, have been interpreted by the courts of this State, to give a member of a class preference over a nominee of a class member. In the case of Justice v. Wilkins (1911), 251 Ill. 13, 95 N.E. 1025, the supreme court of this State construed section 18 of the Administration Act then existing, where preferences were listed, and where, after each preference, the words added were "`or any competent person nominated by them,' or by him or her, as the case may be." (See Justice v. Wilkins (1911), 251 Ill. 13, 15.) The supreme court at that time stated:
"* * * the statute is mandatory to appoint one or more of the next of kin residing in the State, who were otherwise qualified, unless they waived their rights. [Citations.] When any one heir of a class waives the right and nominates another, the one so nominated is not to stand in place of the other, with equal rights to administer as against the other heirs of the class, unless the person nominating is the only heir of that class." Justice v. Wilkins (1911), 251 Ill. 13, 16.
In In re Estate of Marco (2d Dist. 1942), 314 Ill. App. 560, 41 N.E.2d 783, the appellate court held the newly enacted Probate Act of 1939 did not change the rule of Justice v. Wilkins, minor changes in the new act notwithstanding. The court said in that case:
"* * * a stranger to the class * * * does not stand in the place of the one nominating him." In re Estate of Marco (2d Dist. 1942), 314 Ill. App. 560, 565.
 1 The policy expressed in Justice v. Wilkins and In re Estate of Marco was adhered to in this court in In re Estate of Smith (1st Dist. 1963), 41 Ill. App.2d 86, 190 N.E.2d 175, where this court said:
"The nominee of one of the class entitled to appointment does not have the same standing as the one nominating him and as against others of the same class is not favored." (In re Estate of Smith, 41 Ill. App.2d 86, 90.)
It is thus seen that the precedents of Justice, In re Estate of Marco and In re Estate of Smith indicate that, as a general rule, if the court must decide between the issue of appointing a sister as the administrator or appointing the nominee of a sister as administrator, the sister of the decedent should be appointed as against the nominee.
We are aware that the cases referred to have construed probate acts prior to the present act in effect from January 1, 1976. Section 9-3 of the current Probate Act, which lists the preference for appointment of administrator, is written with essentially the same language as had appeared in the prior acts. It lists the order of preferences and, after each preference, adds the designation of words including "any person nominated by him or by them, such as both the brothers and sisters of any person nominated by them."
 2 While it may be argued that the language which appears puts the *384 nominee of the preferred class member on an equal footing with the class member, the use of the word "them" might also be construed to mean that the nominee must be nominated by all the class members. Such construction, of course, would result in creating a situation where a court could never appoint a nominee unless all the class members favor a nominee. The courts, in the cases we have referred to, have construed such language to mean that a class member has a preference over a nominee of a class member. We, therefore, find nothing in the language or the precedents which would support the conclusion that a trial court has complete discretion to appoint as administrator, either a class member or a nominee of a class member on an equal basis.
 3 The second problem for determination involves the issue of whether there is evidence in the record to support the finding of the trial court of conflicts of interest and hostility among the heirs which would render Alice Gualandi unsuitable to be administrator. In the case of In re Estate of Abell (1946), 395 Ill. 337, 346-47, 70 N.E.2d 252, the supreme court stated:
"* * * the statute [on appointing an administrator] neither expressly nor by implication confers an absolute right to persons within one of the eight enumerated classes to be appointed an administrator. Unsuitableness to administer may well consist of an adverse interest of some kind, or hostility to those immediately interested in the estate, whether as creditors or distributees, or even of an interest adverse to the estate itself."
The Abell case was cited with approval and followed in Dennis v. Dennis (4th Dist. 1944), 323 Ill. App. 328, 55 N.E.2d 527. In the Dennis case, the court appointed a nominee of one of two brothers over the other brother, and quoted as a basis for so doing from 23 C.J. Executors and Administrators 1047 (1921), "[that] unsuitableness [to administer] may consist in adverse interest of some kind, or hostility to those immediately interested in the estate." (323 Ill. App. 328, 337.) The court in the Dennis case noted that there were very bitter and hostile feelings between the two brothers, as well as a "tremendous conflict of interest" between them. As a result, the court there held that it would be improper to appoint one brother over the disinterested nominee of the other brother. (Dennis v. Dennis, 323 Ill. App. 328, 339.) It is, therefore, clear that if a preferred class member who is unsuitable to administer the estate (where there is a conflict of interest, adverse interest, or hostility between the preferred class member who petitions to be appointed and those immediately interested in the estate, whether as creditors or as distributee). The court has discretion to appoint a distinterested nominee of a class member in such situation.
There was no evidence in the record in the instant case of hostility, *385 adverse interest or conflict of interest. The only evidence, as such, in the record is the testimony of Alice Gualandi and Donald Hartman. Gualandi simply testified that Delbert Hartman, the decedent herein, was administrator of the estate of John Hartman (another brother) and that the John Hartman estate had been opened in 1965 or 1966 and was still open at the date of the hearing on October 4, 1977. Donald Hartman simply testified that he supported Gualandi's petition. In the testimony, therefore, there was nothing which would make Gualandi unsuitable to administer the estate. Appellee, however, contends in the brief that the trial court "takes judicial notice of all cases filed in the Circuit Court of Kankakee County." She there suggests that the circuit court based its order on what it found in the court files. We find nothing in the record, however, to indicate that the circuit court took judicial notice of the court files or based the court's decision on the court files. Apparently, even if the circuit court had based its order on the court files, the contents of the files would not have been sufficient for a finding that Gualandi was unsuitable to administer, unless the files contained something more than the mere fact that the John Hartman estate, which was opened in 1965 and administered by decedent Delbert Hartman (represented by his attorney) was still open.
The only indication of hostility, adverse interest and conflict of interest comes from the affidavits presented to the court by Mary Hartman Thompson's attorney on October 26, 1977, and, apparently, the trial court based its order, at least in part, on the affidavits. Affidavits, however, are not competent evidence and should not have been considered by the court as the trier of fact. Hollister v. Greenfield (3d Dist. 1965), 58 Ill. App.2d 12, 207 N.E.2d 337; In re Estate of Enoch (1st Dist. 1964), 52 Ill. App.2d 39, 201 N.E.2d 682; 1 Ill. L. & Prac. Affidavits § 13 (1953).
 4 Appellant also contends that the circuit court lacked jurisdiction of the parties to the petition of Mary Hartman Thompson because the four supporting the Gualandi petition had not been formally notified of the Thompson petition prior to the October 4, 1977, hearing, as required by section 9-5 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 9-5). We do not believe that this argument is sound since section 9-5 also states that "a copy of the petition need not be sent to any person who personally appears before the court at the hearing thereon or files waiver of notice." The four heirs who supported the Gualandi petition appeared personally before the court at the hearing on the Thompson petition.
 5 It appears from the record that Mary Hartman Thompson and her counsel may have been confused by the procedure undertaken in the trial court with the submission of affidavits as to whether or not such affidavits would be available as evidence in the cause. If Gualandi was, for some substantial reason, unsuitable to act as an administrator, then the court *386 would have been within its discretion in appointing a nominee of her preferred class member. In view of the developments in the trial court and the procedures undertaken therein, we believe that the best interests of all the parties is that this cause should be reversed and remanded to the Circuit Court of Kankakee County for the taking of evidence on the suitability of Alice Gualandi to act as administrator of the estate of Delbert R. Hartman, deceased. In the event Alice Gualandi is found to be suitable to act as such administrator, then the order of the circuit court appointing City National Bank of Kankakee as administrator of the estate of Delbert R. Hartman, deceased, should be vacated and Alice Gualandi should be appointed as administrator of said estate. If Alice Gualandi is properly found to be unsuitable to act as administrator in the estate by reason of adverse interest, hostility or conflict of interest, then the order denying the petition of Alice Gualandi to be administrator of the estate of Delbert R. Hartman heretofore entered in this cause should be affirmed, and the order appointing City National Bank of Kankakee as administrator of the estate of Delbert R. Hartman should likewise be affirmed.
This cause is, therefore, reversed and remanded to the Circuit Court of Kankakee County for the purposes as herein expressed.
Reversed and remanded with directions.
BARRY, P.J., and STOUDER, J., concur.